UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFORD D. JACKSON, III, | ) | CASE NO.  1:16CV2072 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| WARDEN ALAN LAZAROFF, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Respondent. | ) | |

This matter is before the undersigned on a petition for a writ of habeas corpus pursuant 28 U.S.C. § 2254 filed by Petitioner Clifford D. Jackson, III ("Petitioner"), on August 18, 2016. ECF Dkt. #1.  Respondent Warden Alan Lazaroff ("Respondent") filed a return of writ on January 27, 2017.  ECF Dkt. #16.  Petitioner filed a traverse to Respondent's return of writ on September 22, 2017.  ECF Dkt. #37.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's petition for a writ of habeas corpus (ECF Dkt #1) in its entirety with prejudice.

## I.  SYNOPSIS OF THE FACTS

The Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio, set forth the facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).  As set forth by the Eighth District Court of Appeals, the facts are:

> In the early morning hours of June 10, 2011, Donna D. Luster ("Donna D.") was at the home of her parents with her son and daughter.  She was talking on the phone and sitting in the front room with her son and her sisters Bernadette Luster ("Bernadette") and Gloria Luster ("Gloria"), when suddenly [Petitioner], Donna D.'s ex-boyfriend, barged into the home wielding a gun.  He immediately questioned who she was on the phone with an stated that "everybody in this bitch about to die." [Petitioner] smacked her in the face with the gun about three times while saying "Bitch I'm going to kill you.  You're going to die."  She stated that she saw her mother's boyfriend, David, exit the bedroom and that [Petitioner] immediately shot David in the face.  When she questioned [Petitioner] why he was doing this, he hit her with the gun again.

Donna D. testified that when Gloria tried to help her, [Petitioner] hit Gloria in the head with the gun.  After Donna D. and Gloria retreated to the bedroom, [Petitioner] kicked in the door even though Gloria was trying to hold the door shut. [Petitioner] pushed Donna D. onto the bed and repeatedly stabbed her in the head with a knife. After Gloria pushed [Petitioner] off her, the knife fell, and Donna D. ran to the kitchen. [Petitioner] ran after her, and when he saw Bernadette, [Petitioner] pointed the gun at Bernadette, spun the barrel of the gun, and pulled the trigger; the gun did not fire.

Donna D. then ran to her mother's room and hid in the closet with her mother. [Petitioner] entered the bedroom, stood on the bed, and pointed the gun at them while saying, "you bitches about to die."  Donna D., fearing for her mother's safety, charged at [Petitioner], and they began fighting.  Donna D. chased after [Petitioner] as he tried to run after her mother, but [Petitioner] struck Donna D. in the head with the gun again, causing her to fall.  After she got off the floor, Donna D. climbed out of her mother's window and hid in her neighbor's garage.  While hiding, she saw [Petitioner] by the side of the house lifting his bicycle over the fence. [Petitioner] then climbed over the fence and left the area.  Two days later, [Petitioner] was arrested without incident after he was seen riding his bicycle.

A 911 call placed by Gloria was played for the jury where Gloria can be heard telling the dispatcher that "he's trying to shoot my sister."  Gloria testified that when [Petitioner] was trying to shoot her sister, she "rushed" at him, and he struck her with the butt of the gun on the left side of her face, which caused her to fall to the floor. After getting up, she an Donna D. ran into the bedroom, where [Petitioner] stabbed Donna D. in the head with a knife.  When Gloria rushed at [Petitioner] again and the knife fell, [Petitioner] chased her into another bedroom.  Although Gloria tried to hold the door shut, [Petitioner] wedged his arm in the doorway, while pointing and clicking the gun, but it did not fire.  Once [Petitioner] left, she ran to the downstairs neighbor.

Gloria told the jury that [Petitioner] was trying to shoot all of them, but the gun did not discharge. According to Gloria, [Petitioner] was saying "Bitch ya'll going to die. All ya'll bitches going to die."

Bernadette testified that when [Petitioner] burst through the door, she saw [Petitioner] with a gun in his hand, and she immediately ran into her parents' bedroom to tell them that [Petitioner] was in the house. According to Bernadette, her parents left the room, with her father, David exiting first.  When David asked "What's going on?" - [Petitioner] responded, "This is what's going on," and shot David in the face.

After David was shot, Bernadette ran into her bedroom and put the children, including her niece and Donna D.'s son and daughter, into the bedroom closet and pushed the bed up against the closet door.  Bernadette testified that as she ran to the kitchen, [Petitioner] pointed the gun at her and pulled the trigger, but it did not fire. She stated that she hid in the closet until she did not hear any further commotion, then she climbed out of the second-floor window.  She eventually went back into the house and took the children downstairs to the neighbors.  On cross-examination, Bernadette admitted that she did not tell the police that [Petitioner] tried to shoot her.

Donna D.'s mother, Donna Luster ("Donna") testified that when she and David came out of the bedroom, [Petitioner] shot David in the face.  She stated that [Petitioner] then tried to shoot her, but the gun did not fire.  She stated that [Petitioner] was "clicking" it - meaning that he was pulling the trigger.  Donna testified that she ran into her bedroom.  She was hiding in her closet with Donna D. when [Petitioner] stood on the bed and stated that he was "going to kill us."  Donna testified that after she escaped out of the bedroom, she went to the downstairs neighbor, who called 911.

The jury also heard testimony from all three of the children who were present in the house.  They all stated they heard screaming while hiding in the closet.

Additionally, the 911 calls that were placed by neighbors were played for the jury. Each neighbor testified regarding the circumstances, that they heard females screaming, and heard either a loud thump or a gunshot.

Terence Richardson, a former inmate at the county jail with [Petitioner], testified that while he was in jail, [Petitioner] told him about the murder.  According to Richardson, [Petitioner] stated that someone tried to intervene and "found himself dead."  The jury further heard that Richardson was facing charges for a total possible sentence of 60 years in prison, but after he contacted the police with the information he had in [Petitioner's] case, he pled guilty to one charge and received a sentence of seven years.

Medical examiner Dr. Thomas Gilson testified that he signed off on the autopsy of David.  Based on the stippling around the gunshot entrance wound and fouling, Gilson opined that the barrel of the gun was approximately five to seven inches away from David's face.  Gilson testified that the cause of death was a gunshot wound through the cheek of David that passed through the brain and the manner of death was homicide.

Following the state's presentation of its case, the court granted [Petitioner's] Crim.R. 29 motion for judgment of acquittal on Counts 5 (kidnapping), 13 (attempted aggravated murder), and 15 (attempted aggravated murder).

[Petitioner] called two witnesses in his defense - Ronald Shobert, the warden of the Cuyahoga County Jail, and Michelle Johnson, a certified fingerprint examiner at the Cleveland Police Department.  Shobert testified that [Petitioner] had written a letter dated March 29, 2012, to inform the department that legal documents pertaining to his case had been taken from his jail cell, which included discovery documents. Shobert testified that those documents were never recovered.

Johnson testified that [Petitioner's] fingerprints were not found on the ginger ale soda bottle or the knife recovered, even though various witnesses testified to seeing [Petitioner] drink from the soda bottle.  Johnson admitted that overlapping of fingerprints on both the bottle and the knife could have distorted any identifiable prints.

The trial court denied [Petitioner's] renewed Crim.R. 29 motion for judgment of acquittal, and the case was submitted to the jury on the remaining counts, including the state's request for the lesser included offense of murder to be considered.

> The jury found [Petitioner] not guilty on Count 14 (attempted aggravated murder). The jury also found [Petitioner] not guilty of Count 1, aggravated murder, but guilty of the lesser-included offense of murder.  The jury also found [Petitioner] guilty on all the remaining counts - Count 2 (aggravated murder), Counts 3 and 4 (aggravated burglary), Counts 6 through 12 (kidnapping), and Counts 16 through 19 (attempted aggravated murder).  Additionally, the jury found [Petitioner] guilty of all the attendant one- and three-year firearm specifications.  The trial court found [Petitioner] guilty of both Counts 20 and 21, having weapons while under disability, and also the notice-of-prior-conviction and repeat offender specifications.

*State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014 WL 4100944 (Aug. 21, 2014).

## II.  PROCEDURAL HISTORY

On May 17, 2013, after a jury trial, Petitioner was found guilty of one count of murder, one count of aggravated murder, two counts of aggravated burglary, seven counts of kidnapping, and four counts of attempted aggravated murder, as well as being found guilty of firearm specifications.  ECF Dkt. #16-1 at 28-40.  Additionally, Petitioner had waived his right to a jury trial on two counts of having a weapon while under disability, and the trial court found Petitioner guilty of both counts.  *Id.*  On June 19, 2013, Petitioner was sentenced to an aggregate term of life without parole for the murder conviction and additional lesser penalties for the other convictions. *Id.* at 35.

Petitioner filed an appeal to the Eighth District Court of Appeals, Cuyahoga County, Ohio. ECF Dkt. #16-1 at 41.  On August 21, 2014, the Eighth District Court of Appeals affirmed the judgment of the trial court.  *Id.* at 151.  Petitioner then filed an appeal to the Supreme Court of Ohio.  *Id.* at 176.  The Supreme Court of Ohio declined to accept jurisdiction.  *Id.* at 220.

On January 14, 2014, Petitioner filed a petition for post-conviction relief in the Cuyahoga County Court of Common Pleas and requested an evidentiary hearing.  ECF Dkt. #16-1 at 221. Additionally, Petitioner filed a "motion for summary judgment upon post conviction" on March 7, 2014, and again requested an evidentiary hearing.  *Id.* at 264, 277.  The trial court denied Petitioner's petition for post-conviction relief on July 10, 2014.  *Id.* at 299.  Petitioner appealed the denial to the Eighth District Court of Appeals.  *Id.* at 309.  This appeal was denied initially and upon reconsideration.  *Id.* at 326, 335.

Petitioner filed an application for reopening his appeal pursuant to App. R. 26(B) on March 13, 2015.  ECF Dkt. #16-1 at 336.  The Eighth District Court of Appeals denied the application to

reopen.  ECF Dkt. #16-2 at 3.  Petitioner filed an appeal to the Supreme Court of Ohio.  *Id.* at 16.  The Supreme Court of Ohio declined to accept jurisdiction of the appeal.  *Id.* at 63.

Additionally, Petitioner filed approximately sixty-five motions, according to the record filed by Respondent, making a number of requests and challenges prior to, during, and after his trial.  ECF Dkt. #16-3, #16-4. Further, Petitioner filed four petitions for writs of mandamus.  ECF Dkt. #16-5 at 3, 93, 169, 175.  Each petition was denied.  *Id.* at 85, 168, 199-200.

## III.    **FEDERAL HABEAS PETITION**

Petitioner filed his federal habeas petition pursuant to 28 U.S.C. § 2254 on August 18, 2016.  ECF Dkt. #1.  In the habeas petition, Petitioner asserts the following grounds for relief:

GROUND ONE: INSUFFICIENT EVIDENCE TO SUPPORT PETITIONER'S CONVICTIONS, IN VIOLATION OF PETITIONER'S FEDERAL DUE PROCESS RIGHTS.

GROUND TWO: INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHTS.

GROUND THREE: DENIAL OF PETITIONER'S RIGHTS TO A SPEEDY TRIAL IN VIOLATION OF HIS 5TH AND 14TH AMENDMENT DUE PROCESS RIGHTS.

GROUND FOUR: TRIAL COURT'S IMPROPER JURY INSTRUCTIONS RESULTED IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS UNDER THE 5TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

GROUND FIVE: THE TRILA COURT ABUSED ITS DISCRETION WHEN IT IMPOSED A SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE.

GROUND SIX: INSUFFICIENT EVIDENCE ADDUCED AT TRIAL TO SUPPORT CONVICTIONS FOR OFFENSES OF AGGRAVATED BURGLARY: IN VIOLATION TO FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONST.

GROUND SEVEN: VOID JUDGMENT: CONSTITUTING A DENIAL OF DUE PROCESS IN VIOLATION TO THE UNITED STATES CONSTITUTION.

GROUND EIGHT: THE TRILA COURT VIOLATED THE PETITIONERS DUE PROCESS RIGHTS IN THE BRINGING OF A LESSER INCLUDED OFFENSE THAT WAS NOT FOUND OR CHARGED IN THE INDICTMENT.   IN VIOLATION OF BOTH FEDERAL CONSTITUTION AND OHIO CONSTITUTION FIFTH AND FOURTEENTH. AMENDS..

GROUND NINE: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPOSED COURT COSTS.

GROUND TEN: LACK OF ADEQUATE AND LAWFUL SUBJECT MATTER JURISDICTION [sic]

ECF Dkt. #1 at 5-9, 26.[1]

## IV.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run from the latest of:

> A.    The date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;
>
> B.    The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action;
>
> C.    The date on which the constitutional right asserted was initially recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> D.    The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### B.     Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present

---

[1]Petitioner's habeas petitions also include lengthy statements of fact regarding each alleged ground for relief that were not reproduced herein.  ECD Dkt. #1 at 14-25.

it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218–19 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is

-7-

actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest

on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

## V.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998). Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652, 655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A.  Decisions of lower federal courts may not be considered.

B.  Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.  The state court decision may be overturned only if:

  1.  It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or

  2.  The state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or

  3.  'The state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or

      4.      The state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

    E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

    (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine*, 986 F.2d at 1514. The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**VI.**    **ANALYSIS**

Petitioner filed his traverse to Respondent's return of writ on September 22, 2017.  ECF Dkt. #37.  The traverse contains ten attached propositions of law that somewhat resemble the grounds for relief presented in Petitioner's habeas petition.  ECF Dkt. #37-1, #37-2, #37-3, #37-4, #37-5, #37-6, #37-7, #37-8, #37-9, #37-10.  As Petitioner is acting *pro se*, the undersigned will liberally construe the grounds for relief presented in the habeas petition and the propositions of law presented in the traverse.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Respondent was not afforded an opportunity to reply to Petitioner's traverse and did not move the Court for such an opportunity.  *See* ECF Dkt. #6.  Accordingly, the undersigned will consider Respondent's return of writ insofar as it applies to issues raised in both Petitioner's habeas petition and traverse.

**A.**    **Proposition of Law One**

In his traverse, Petitioner asserts the following proposition of law:

> THERE WAS NO PROBABLE CAUSE TO OBTAIN SUBJECT MATTER JURISDICTION TO OBTAIN A TRUE BILL/INDICTMENT WERE THE STATE FAILED TO PRESENT TO THE GRAND JURY THAT THERE WAS NO FORCE ENTRY TO SUPPORT THE FABRICATED STATEMENTS THAT THE PETITIONER HAD IN FACT BROKE INTO THE STRUCTURE BY KICKING IN THE BACK DOOR.  THE STATES EXPERT TESTIFIED THAT NO FORCE WAS USED, AND THE INSUFFICIENT EVIDENCE STAND IN THE INSTRUCTIONS. [sic]

ECF Dkt. #37 at 1.  Petitioner cites Ohio Revised Code ("O.R.C.") § 2911.11(A)(1)-(2), which states:

> 2911.11 Aggravated Burglary
>
> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

ECF Dkt. #37-1 at 2.  Continuing, Petitioner cites the Eighth District Court of Appeals for the propositions that he "barged into the home" and "burst into the residence."  *Id.* (quoting *Jackson*, 2014 WL 4100944, at *1, 5).

-12-

Petitioner then states that he:

> [I]s making the distinction between the facts presented in the States actual Police Reports, Detective Statement, Affidavits, and Complaint to Grand Jury, as the Probable Cause and Subject Matter Jurisdiction to obtain a True/Bill Indictment, upon Aggravated Burglary. [sic]

ECF Dkt. #37-1 at 2. No citations to the record are provided by Petitioner. Petitioner then states:

> No Sufficient evidence, was presented to the Grand Jury, were the use of force to brake into the structure, by kicking in the door. was states as facts in the witness statements, however, had the evidence been presented to the Grand Jury, to the Contrary, the Grand Jury would not have been able to hand down a True Bill/Indictment, for Aggravated Burglary, because it lacked the Evidence and Element of any use forced entry into the structure, thus proving that the State's Prosecution presented non of the evidence to the grand jury that No force was ever used on the back door, in which the prosecution failed to present to the Grand Jury by withholding those very Substantial Elements and Facts. [sic]

*Id.* at 3 (emphasis in original). Petitioner then claims that the jury was lead astray by the following instruction:

> Aggravated Burglary under [O.R.C.] 2911.11(A)(1) and (2), can be committed if the offender has a deadly weapon on or about his person or under his control.

*Id.* at 4. Additionally, Petitioner claims that there was no probable cause for an arrest warrant and that the trial court lacked subject matter jurisdiction. *Id.* at 4-8. In conclusion, Petitioner states:

> The perjudice stands at this point were its clear that the lead expert witness made it plain on the record THAT NO FORCE WAS EVER FOUND TO SUPPORT BRAKING IN BY KICKING IN THE BACK DOOR! Therefore, the The Trial Court Lacked Probable Cause and Subject Matter Jurisdiction to obtain the Grand Jury Indictment of Aggravated Burglary, causing the Conviction and Sentence to Unconstitutionally against [Petitioner's] Liberty Interest, and must by **REVERSED! AND VACATED!** [sic]

*Id.* at 8 (emphasis in original).

Petitioner's argument is not supported by the record. When charging the jury, the trial court stated:

> Count 3. [Petitioner] is charged in Count 3 of the indictment with aggravated burglary in violation of [O.R.C.] section 2911.11 together with two firearm specifications in violation of [O.R.C.] sections 2941.141 and 2941.145.

> Before you can find [Petitioner] guilty, you must find beyond a reasonable doubt that on or about the 10th day of June 2011 and in Cuyahoga County, Ohio, [Petitioner] did by force, stealth or deception trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure when Donna D. Luster and/or David J. Thompson, a person other than an accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, specifically aggravated murder, and the offender recklessly inflicted or attempted or threatened to inflict physical harm on David J. Thompson.

ECF Dkt. #16-12 at 38.  The trial court went on to define the terms used in the jury instruction, and then provided the same jury instruction for the second aggravated burglary charge.  *Id.* at 38-42.

Petitioner's recitation of the jury instruction given by the trial court improperly omits any mention of "force, stealth, or deception," as stated in O.R.C. § 2911.11.  Instead, Petitioner claims that no evidence supports the fact that he kicked in the back door to the residence.  Despite Petitioner's arguments, the jury was not required to find that he specifically enter the residence through a use of force, but instead was instructed to determine whether he entered the residence by means of force, stealth, or deception.  Further, Petitioner fails to explain his allegation that the State "was lacking in probable cause being found and or presented to the Grand Jury, therefore, lacking in Subject Matter Jursidiction . . ."  ECF Dkt. #37-1 at 8.  Petitioner does not indicate how there was "insufficient evidence" for probable cause or subject matter jurisdiction, especially considering the 911 calls that were made by the victims after the course of events that led to the criminal charges filed against Petitioner and the multiple eyewitnesses who testified that Petitioner committed the charged offenses.  *See Jackson*, 2014 WL 4100944, at *2-3.  For these reasons, Petitioner's first proposition of law fails.

**B.**     **Proposition of Law Two**

Petitioner's second proposition of law states:

> THE STATE MADE A KNOWING BRADY VIOLATION IN WITHHOLDING THE DNA AND AGGRAVATED BURGLERY MATERIALS KNOWING THAT THE SECOND DNA EVIDENCE WAS NOT PRESENTED TO THE GRAND JURY AND/OR TRIAL JURY, NOR WAS THE FACTS THAT THERE WAS NO ELEMENT OF BY FORCE IN VIOLATION OF THE DUE PROCESS AND FAIR AND JUST TRIAL OF BOTH THE UNITED STATES AND OHIO CONSTITUTIONS [sic]

ECF Dkt. #37-2 at 1.  Namely, Petitioner claims that a second DNA test was never presented to the jury and that "[a]ll of the evidence was favorable to [Petitioner], that was never presented - by the

prosecution, and would have changed the outcome of the Grand Jury and Trial Juries findings." *Id.*  Petitioner claims that this DNA evidence "fail[s] to place [Petitioner] at the scene, and the prosecution  knew this when it withheld these facts." *Id.*

Despite discussion of the DNA evidence that Petitioner believes was withheld, Petitioner never provides or cites the evidence, or explains how such evidence would prove that he did not commit the crimes for which he was convicted.  Moreover, Petitioner does not explain how this DNA evidence would have shown that he did not commit the underlying crimes when multiple eyewitnesses who knew Petitioner provided testimony indicating  that he was the offender. Petitioner's argument that the State violated *Brady* by withholding evidence is not only unsupported by the record, but is refuted by the evidence of record.  Accordingly, Petitioner's second proposition of law fails.

### C.      Proposition of Law Three

The third proposition of law set forth by Petitioner states:

THE TRIAL COURTS VERDICT OF GUILTY ON THE LESSER INCLUDED OFFENSE OF AGGRAVATED MURDER PURSUANT TO O.R.C. 2903.02(B)AND CRIM. R. 31(C), WAS CONTRARY TO LAW AND UNCONSTITUTIONAL PURSUANT TO THE AGGRAVATED MURDER ELEMENT OF PRIOR CALCULATION AND DESIGN STATUTE O.R.C. 2903.01(A)(2), AND (B)(4), AGGRAVATED BURGLARY ELEMENTS OF BY FORCE, PURSUANT TO O.R.C. 2911.11(A)(1), AND (B)(2).  IN WHICH NEITHER ELEMENT WAS READ INTO THE JURY INSTRUCTIONS NOT FOUND BEYOND A REASONABLE DOUBT BY THE PROSECUTION, IN VIOLATION OF THE PETITIONER'S DUE PROCESS AND LIBERTY INTEREST HELD BY RESPONDENT [sic]

ECF Dkt. #37-3 at 1.  Petitioner again asserts that the jury was not properly instructed his that conviction for aggravated burglary required a finding of forced entry.  For the reasons stated above, the jury in Petitioner's case was properly instructed regarding aggravated burglary and Petitioner's argument fails.

Additionally, Petitioner claims:

Neither was the jury instruction of Prior Calculation and design instructed to find a verdict of guilty on the Aggravated Murder, or Lesser Included Offense of Aggravated Murder. pursuant to 2903.02(B).  and not O.R.C. 2923.02(C). [sic]

ECF Dkt. #37-3 at 1.  A review of the trial court transcript shows that the jury was properly instructed on the meaning of prior calculation and design, and was likewise fully instructed on the

requirements for finding Petitioner guilty of the lesser included offense of murder.  ECF Dkt. #16-12 at 21-38.  Petitioner fails to explain how the jury "lost its way" due to the jury instructions issued by the trial court.  *See* ECF Dkt. #37-3 at 4.  For these reasons, Petitioner's third proposition of law fails.

### D.    Proposition of Law Four

Petitioner's fourth proposition of law states:

> HAD COUNSEL BEEN REASONABLE AND EFFECTIVE IN HIS ASSISTANCE AT EVER CRITICAL STAGE OF THE PROCEEDINGS THE OUTCOME WOULD HAVE BEEN DIFFERENT WHICH WAS A GREAT PREJUDICE THAT ALLOWED THE DUE PROCESS, AND FAILURE OF A FAIR AND JUST TRIAL AGAINST THE PETITIONER'S LIBERTY INTEREST HELD BY THE RESPONDENT AT THIS TIME WERE THE PETITIONER DID ALL HE COULD TO CORRECT THE VIOLATIONS BEFORE AND DURING TRIAL THROUGH NOTIFYING COUNSEL OF HIS ISSUES AND CONCERNS IN THIS CASE: [sic]

ECF Dkt. #37-4 at 1.  Specifically, Petitioner claims that his attorney never advised him of his right to file a motion for post-conviction release.  *Id.* at 2.  Additionally, Petitioner asserts that his counsel did not attack the fact that: the State did not show that force was used when Petitioner entered the residence; no prior calculation and design was found for the aggravated murder charges; the second DNA test was not presented to the jury; and his right to a speedy trial was violated.  *Id.*

Petitioner fails to explain how his counsel was ineffective.  Regarding the use of force to enter the residence, it has already been stated by the undersigned that use of force when entering the residence was not a requirement for a verdict of guilty, but was instead merely one manner in which the jury could have determined Petitioner committed aggravated burglary when entering the residence.  As for prior calculation and design for the aggravated murder charges, the jury was properly instructed and then found Petitioner guilty of one count of aggravated murder, and not guilty of one count of aggravated murder but guilty of the lesser included offense of murder.  ECF Dkt. #16-1 at 33-35.  The trial court then merged the offenses of aggravated murder and murder.  *Id.* at 35.  Accordingly, it is unclear as to how Petitioner's counsel was ineffective by not attacking the fact that the trial court merged the murder conviction with the aggravated murder conviction.  Insofar as prior calculation and design was found for the attempted aggravated murder charges, a review of the record shows that the jury was properly instructed regarding the attempted aggravated

-16-

murder charges and then proceeded to find Petitioner guilty.  Petitioner does not state how his counsel was ineffective beyond merely asserting that his counsel was aware that there was insufficient evidence and "then allowed a Lesser included offense by Prior Calculation and Design to be made to the Maximum penalty, on counts 13 thru 19." [sic] *Id.* at 3.  Additionally, as stated above, Petitioner fails to identify the second DNA test that he discusses in his traverse and fails to indicate how the DNA test would have changed the results of his trial.  Accordingly, Petitioner has failed to explain how his counsel was ineffective when not taking issue with the handling of this second DNA test.  Finally, Petitioner does not indicate why he believes his right to a speedy trial was violated or in what manner this right was violated.  Accordingly, Petitioner's fourth proposition of law fails.

### E.      Proposition of Law Five

In his fifth proposition of law, Petitioner states:

> THE STATE VIOLATED THE PETITIONER'S SPEEDY TRIAL RIGHT IN VIOLATION OF THE SIXTH AMENDMENT, AND OHIO CONSTITUTION AFTER DISREGARDING HIS MOTIONS TO ADDRESS THE VIOLATIONS WERE NO CONTINUANCE WAS EVER FILED GIVEN REASON ON THE COURTS DOCKET PURSUANT TO THE OHIO REVISED CODE 2945.71 THRU 72: [sic]

ECF Dkt. #37-5 at 1.  Petitioner claims that "[t]here is no procedural bar or Res Judicata where [Petitioner] motioned to address the Speedy Trial violations at the Pre-Trial Stage, and Trial Counsel ignored it, and the Trial Court ignored it as well . . ." *Id.* at 3.  This argument is without merit.

The Eighth District Court of Appeals properly addressed Petitioner's claim that his right to a speedy trial was violated, stating:

> Further review of the docket in *State v. Jackson*, Cuyahoga C.P. No. CR-11-551409, demonstrates that a total of 677 days were tolled as a result of [Petitioner's] 91 pro se motion, 75 pretrial motions as filed by [Petitioner's] legal counsel, and 27 continuances of trial as granted at the request of [Petitioner's] legal counsel.  A total of 20 days were not tolled. [Petitioner] was brought to trial within 270 days as required by [O.R.C.] 2945.71.

ECF Dkt. #16-2 at 8-9.  The state court's adjudication on the merits of Petitioner's speedy trial claim warrants the application of AEDPA deference.  28 U.S.C. § 2254(d); *Brown v. Bobby*, 656 F.3d 325, 329-30 (6th Cir. 2011).  Petitioner has failed to show that either condition contemplated in 28 U.S.C. § 2254(d) applies in this case, and therefore his fifth proposition of law is without merit.

-17-

**F.**  **Proposition of Law Six**

Petitioner's sixth proposition of law states:

THE EVIDENCE IN THE CASE AT BAR IS INSUFFICIENT AS A MATTER OF LAW AND IS A DUE PROCESS VIOLATION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 10 OF THE CONSTITUTION OF OHIO.

ECF Dkt. #37-6 at 1.  Specifically, Petitioner asserts that: the state could not produce "one bit of physical evidence linking [Petitioner] to the crimes charged"; and that each of the witnesses were either family members, friends, or neighbors of the victims and that they produced testimony that was flawed and inconsistent.  *Id.*  Petitioner claims that the nature of the events show that there was no prior calculation and design, which is required for attempted aggravated murder, and that the jury found that there was no prior calculation and design for the murder of David Thompson and that it was erroneous that the jury found prior calculation and design for the attempted aggravated murder charges.  *Id.* at 2.

Petitioner's argument is without merit.  The Court applies two layers of deference when considering the sufficiency of the evidence in federal habeas corpus cases.  First, the Court looks to whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Second, the Court looks to the factors of 28 U.S.C. § 2254(d) to determine whether the state's adjudication can be reviewed under the AEDPA.  *See Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011).  The undersigned finds that both layers of deference support upholding the decision of the state court.

A rational trier of fact could reasonably have found that Petitioner committed each crime for which he was convicted beyond a reasonable doubt.  First, Petitioner's claim that there was no physical evidence linking him to the crime scene is incorrect.  Blood found on the front door of the victims' residence was consistent with Petitioner's DNA profile.  *Jackson*, 2014 WL 4100944, at *6.  Moreover, the State called seventeen witnesses who provided testimonial evidence against Petitioner, including the living victims, as described above by the Eighth District Court of Appeals.  *See* ECF Dkt. #16-12 at 3.  The victims knew Petitioner as he was the ex-boyfriend of one of the

victims.  Further, the events leading to the underlying criminal charges appear to be calculated as Petitioner went to the house of his ex-girlfriend's parents, announced that everyone in the house was going to die, chased the victims through the house, broke through doors, and retrieved a knife from the kitchen to stab the victims when his gun failed to fire after the shot that killed David Thompson. *Jackson*, 2014 WL 4100944, at *5.  Additionally, the undersigned agrees with the Eighth District Court of Appeals that a review of the testimony of the State's witnesses shows that any conflicts in that testimony are not material to Petitioner's convictions.  *See id.* at *7.

Further, Petitioner has failed to show that the Court should upset the decision of the state court pursuant to 28 U.S.C. § 2254(d).  Petitioner has not shown that the state court issued a decision that was contrary to federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d). Accordingly, Petitioner's sixth proposition of law fails.

### G.    Proposition of Law Seven

In his seventh proposition of law, Petitioner states:

TRIAL COURT ERROR IN GIVING THE JURY A FLIGHT INSTRUCTION IS A FEDERAL DUE PROCESS VIOLATION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND AN ART. § 10 DUE PROCESS VIOLATION AND STATUTORY VIOLATIONS OF OHIO JURY INSTRUCTIONS CR 409.13. [sic]

ECF Dkt. #37-7 at 1.  The Eighth District Court of Appeals addressed the flight instruction, noted the error in the flight instruction, indicated that similar flight instructions had been upheld in numerous cases, and found that the error in the flight instruction was not prejudicial. *Jackson*, 2014 WL 4100944, at *7-8.  Although the flight instruction was improper, the Eighth District Court of Appeals determined that the instruction allowed the jury to make its own conclusions on flight and did not change the underlying facts of the case.  *Id.* at *8.

Petitioner has failed to show that the Court should upset the state court's decision pursuant to 28 U.S.C. § 2254(d).  As discussed above, Petitioner has not shown that the state court issued a decision that was contrary to federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d). Further, the Eighth District Court of Appeals reasonably held that the jury instruction did not cause

-19-

prejudice to Petitioner because it did not change the underlying facts of the case and allowed the jury to make its own decision on whether Petitioner fled the scene of the crimes.  For these reasons, Petitioner's seventh proposition of law fails.

### H.      Proposition of Law Eight

In his eighth proposition of law Petitioner states:

> TRIAL COURT ERROR IN DISREGARDING THE PROPER ALLIED OFFENSE PROCEDURE IS A FEDERAL AND STATE DUE PROCESS VIOLATION AS IS THE FAILURE OF THE COURT TO MERGE ALL ALLIED OFFENSES. [sic]

ECF Dkt. #37-8.  Petitioner cites *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314 (*abrogated in part by State v. Ruff*, 143 Ohio St.3d 2015-Ohio-995, 34 N.E.3d 892).  In *Johnson*, the Supreme Court of Ohio held:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

128 Ohio St.3d at 163-63 (internal citations omitted).  The Supreme Court of Ohio modified the *Johnson* holding in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26, stating:

> At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

In Petitioner's case, the Eighth District Court of Appeals concluded:

> The crime of aggravated burglary was complete moments after Jackson invaded the home. As soon as Jackson forced his way through the door, he immediately struck Donna D. in the head with the butt of the gun. These actions constituted aggravated burglary and were separate from the subsequent crimes of attempted aggravated murder (stabbing Donna D. in the head with a knife or trying to shoot Donna D., Gloria, Bernadette, or Donna), aggravated murder of David, and kidnapping (chasing, terrorizing, and restraining the liberty of the other seven occupants of house). Jackson's animus was separate and distinct for each crime after he initially forced his way into the house with the purpose to harm Donna D.
>
> Accordingly, aggravated burglary did not merge with any of the other offenses for sentencing purposes. Jackson's fourth assignment of error is overruled.

*Jackson*, 2014 WL 4100944, at *10.

The Eighth District Court of Appeals provided a clear analysis of why Petitioner's offenses were not merged.  According to Petitioner, he should have received only one sentence for his convictions for aggravated burglary, aggravated murder, and attempted aggravated murder since these convictions should have been merged.  ECF Dkt. #37-8 at 1.  Additionally, Petitioner claims that his aggravated burglary and aggravated kidnapping charges should be merged.  *Id.*  Petitioner's reading of *Johnson* is incorrect, as stated by the Eighth District Court of Appeals.   Moreover, Petitioner has again failed to shown that the state court issued a decision that was contrary to federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d).  Accordingly, Petitioner's eighth ground for relief is without merit.

## I.      Proposition of Law Nine

Petitioner's ninth proposition of law states:

> THE TRIAL COURT'S IMPOSITION OF A LIFE SENTENCE WITHOUT THE POSSIBILITY OF PAROLE IS A VIOLATION OF FEDERAL AND STATE DUE PROCESS RIGHTS.

ECF Dkt. #37-9.  In his traverse, Petitioner contends that the "trial court failed to consider his mental illness and neurocognitive" [sic] as mitigating factors when sentencing him to life without parole.  *Id.*  The Eighth District Court of Appeals found that "the trial court addressed, considered, and factored in at length, [Petitioner's] mental illness . . ."  *Jackson*, 2014 WL 4100944, at *10.  Petitioner has again failed to shown that the state court issued a decision that was contrary to federal

law or that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). For this reason, Plaintiff's ninth proposition of law is without merit.

### J.      Proposition of Law Ten

In his tenth proposition of law, Petitioner states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPOSED COURT COSTS FOR THIS DEFENDANT WHO HAS A LIFE SENTENCE WITHOUT THE POSSIBILITY OF PAROLE.

ECF Dkt. #37-10 at 1. Petitioner claims that the imposition of court costs "seems to be motivated by a spirit of vengence [sic] and not justice . . ." *Id.* The Eighth District Court of Appeals determined that the imposition of court costs in Petitioner's case was appropriate. *Jackson*, 2014 WL 4100944, at *11. Petitioner has again failed to show that the state court issued a decision that was contrary to federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). Accordingly, Petitioner's tenth proposition of law is without merit.

### VII.      CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's petition for a writ of habeas corpus (ECF Dkt #1) in its entirety with prejudice.


Date: September 6, 2018                    */s/ George J. Limbert*
                                           George J. Limbert
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Crim. P. 59. Failure to file objections within the specified time constitutes a WAIVER of the right to appeal the Magistrate Judge's recommendation. *Id.*